UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Robert Dawson, *an individual*,<br><br>    Plaintiff,<br><br>    v.<br><br>John Bawden, *an individual*; and Oracle Life Solutions, LLC, *a New Jersey limited liability company*,<br><br>    Defendants. | PLAINTIFF'S COMPLAINT<br><br>JURY DEMAND |

1. Like most Americans, Robert Dawson ("Robert") has a mobile residential telephone.

2. Being mobile, Robert takes his phone everywhere he goes. He uses his phone to receive and make important calls, to get emergency information, and to receive and send text messages to family members and friends. He uses his phone regularly for his personal enjoyment.

3. But Robert's privacy and the use of his phone is invaded by the text messages sent, without consent, by Defendants John Bawden ("Bawden") and Oracle Life Solutions, LLC ("Oracle").

4. Robert has no relationship with Defendants, has no account with Defendants, has never provided his number to Defendants, and has never agreed to Defendants sending him any type of communication.

COMPLAINT - 1

5. Defendants have sent Robert 86 commercial text messages soliciting Robert to bet and gamble even though Robert told Defendants to stop at least 15 separate times!

6. Defendants knew that they were sending text messages to a person who did not consent to receive them.

7. But Defendants did nothing to change its practices.

8. Instead, Defendants simply continued to blast text messages without caring if consent was obtained.

9. "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ("TCPA"). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021)

10. Because of Defendants' continuing violations of the law, Robert brings this action to enjoin these abusive practices, and for damages.

**JURISDICTION AND VENUE**

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA which is a federal statute.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the text messages giving rise to this lawsuit were directed to and were received in in this district.

13. This Court has personal jurisdiction over Defendants because their conduct intentionally targeted Robert in the state of Washington.

14. This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

**PARTIES**

15. Plaintiff Robert Dawson is an individual and is a resident of King County, Washington.

16. Defendant Oracle Life Solutions, LLC is a New Jersey limited liability company.

17. Defendant John Bawden is an individual and is a resident of New Jersey.

## FACTUAL ALLEGATIONS

18. Bawden telemarkets using the name "RAZER Sport Club."

19. Bawden has not incorporated an entity with the name RAZER Sport Club or any similar name. Additionally, Bawden has not registered a dba with this name or any similar name.

20. Bawden operates through the website RAZERsport.com which is an exclusive professional sports betting network. Through the website, consumers can purchase a RAZER Sport Membership and apparel.

21. Bawden operates multiple social media accounts for RAZER Sport Club which features pictures of Bawden prominently not only as the main person—but also as the only person—running RAZER Sport Club.

22. RAZERsport.com is conspicuously silent as to the responsible party or entity behind the website. When making a purchase on the website, however, the PayPal account that receives the payment is that of Oracle Life Solutions, LLC.

23. All this indicates that Bawden is personally running the entire operations of RAZER Sport Club either as a sole proprietor or through Oracle Life Solutions, LLC.

24. Robert has had his privacy and the use of his phone invaded by the non-emergency telemarketing text messages from Defendants Bawden and Oracle.

25. Robert is the residential subscriber of the cell phone number 425-442-8008. Robert uses this number as his personal cell phone.

26. Defendants knowingly and willfully texted Robert at least 86 times. Here are two examples:

    i. RAZER Sport Club is hitting at a 72% Win Ratio!! With exclusive information unmatched to any other sports advising company on the map.. We guarantee to cover the spread or get a Free* Month on us!! REPLY "WIN" TO GET STARTED!! ⚾🏒🏀 -RAZER Sport Club.

       - Sent 08/10/20 from 347-491-8897

COMPLAINT - 3

LAWHQ, LLC
299 S. MAIN ST #1300
SALT LAKE CITY, UT 84111
(385) 285-1090

  ii. RAZER Sport Club & I HOPE EVERYONE HAD a HAPPY and BLESSED CHRISTMAS!!!! 🏈🏀🏈 Get TONIGHTS WINNER in NFL or NBA Absolutely FREE*!! Must Cover our Plays for Tonight or get 2 Weeks of Full Service FREE*!! Reply 🏈"XMAS"🏀 & we'll prove we're the BEST in the Business!! 🏈🏀🏈 -RAZER Sport Club

- Sent 12/24/20 from 347-491-8897

27. The 52nd text message that Defendants sent was on December 28, 2020, while Robert was trying to enjoy the holiday and end-of-year week. In response to this text message, Robert responded "Stop" for the first time.

28. However, the very next day on December 29, 2020, Defendants sent two more automated text messages encouraging Robert to bet. Robert again responded "Stop!!" and "No more texts!!"

29. Defendant then sent a manual text message to Robert that said "You stop you silly sack of shit!!"

30. Over the next two months, until February 5, 2021, Robert continued to received telemarketing text messages from Defendants and at least a dozen more times Robert continued to ask for the messages to stop. However, the messages would not stop.

31. Robert never provided his number 425-442-8008 to Defendants, never had a relationship with Defendants, and never gave permission for Defendants to contact him in any way.

32. These text messages advertised the commercial availability of betting services, and the purpose of the text messages was to encourage the purchase of the betting services.

33. The text messages were sent using an Automatic Telephone Dialing System ("ATDS"), and/or an artificial or prerecorded voice message. This is based on the following facts:

  i. The text messages were not personalized;

  ii. Defendants sent a voluminous number of texts to Robert;

COMPLAINT - 4

LAWHQ, LLC
299 S. MAIN ST #1300
SALT LAKE CITY, UT 84111
(385) 285-1090

iii.     Robert continued to receive text messages after asking for the messages to stop and even after Defendants knew Robert had asked for the text messages to stop;

iv.     The phone numbers spammed by Defendants appear to be randomly or sequentially produced from information not consensually provided to Defendants, but from bots, scraping, or some other means;

34. Defendants made the calls without implementing procedures for an maintaining an Internal Do Not Call List. When Robert asked for the texts to stop, they did not stop. Instead, the texts continued. Also, the text messages did not disclose the name of the individual or company sending the messages.

35. Bawden, as the sole operator of RAZER Sport Club, personally runs, authorizes, and oversees the telephone marketing and is directly responsible for the calls.

36. The unwanted telephone calls invaded Plaintiff's substantive right to privacy, namely the right to be free from unsolicited telemarketing phone calls.

37. These text messages have caused Robert frustration, stress, and anxiety. The text messages reduced his phones' storage and battery life. In short, the text messages invaded his privacy, diminished the value of his phone and his enjoyment of life, and were nuisance, an annoyance, and an intrusion into his seclusion.

38. This injury to Robert was done by Defendants with the intent to cause harm or with the knowledge that the harm was substantially certain to result from their actions.

39. First, Defendants not only ignored numerous stop requests but also affirmatively taunted Robert and said: "You stop you silly sack of shit!!"

40. Second, injury from texting is well known. The *State of the Call 2021* report by *hiya*, which analyzed 150 billion calls, reveals: "We each received an average of 144 spam calls last year—58% of which were fraudulent. These calls are frustrating to all of us." https://f.hubspotusercontent30.net/hubfs/6751436/Marketing%20Content/WP-2102-State-of-the-Call-PDF.pdf (last accessed October 14, 2021). Defendants would have not only believed, but

COMPLAINT - 5

would have known, that sending the text messages was substantially certain to cause the injury that the telephone spam statutes were meant to protect against, namely, an invasion of privacy, nuisance, annoyance, etc.

41. Defendants intentionally sent the text messages in violation of the law, which was the cause of the invasion of privacy, nuisance, annoyance, etc. Defendants did this simply for gain and profit, and without any just cause or excuse.

## LEGAL STANDARD

42. The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded voice… [t]o any… cellular telephone" unless the call is "made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii); see also 47 C.F.R. § 64.1200(a)(1).

43. If the call "introduces an advertisement or constitutes telemarketing" then "prior express _written_ consent" is required. 47 C.F.R. § 64.1200(a)(2) (emphasis added).

44. The TCPA prohibits callers from telemarketing to a residential telephone subscriber without instituting procedures for maintaining an Internal Do Not Call List, and part of the required procedures is mandatory disclosure of the name of the individual and company sending the text messages. 47 C.F.R. § 64.1200(d).

45. Both phone calls and text messages are a "call" under the TCPA. *Satterfield v. Simon Schuster,* 569 F.3d 946, 954 (9th Cir. 2009).

46. A defendant "may be held vicariously liable under federal common law principles of agency" for TCPA violations committed by third parties. *In re Joint Petition Filed by Dish Network, LLC,* 28 FCC Rcd. 6574, 6574 (2013).

47. An individual may be personally liable for TCPA violations when personally involved in sending or authorizing the text messages. 47 U.S.C. § 217; *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013).

48. The tort of invasion of the right to privacy prohibits the wrongful intrusion into people's private activities. Intrusion upon seclusion is based on people's right to be left alone. Someone who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of their privacy if the intrusion would be highly offensive to a reasonable person.

49. Pursuant to Washington's Commercial Electronic Mail Act ("CEMA"), no person "may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident" unless the recipient has "clearly and affirmatively consented in advance." RCW 19.190.060(1), .070(1)(b).

50. "Commercial electronic text message'" is a text message that promotes "real property, goods, or services for sale or lease." RCW 19.190.010.

51. Also under Washington law, a "person making a telephone solicitation must identify him or herself and the company or organization on whose behalf the solicitation is being made and the purpose of the call." RCW 80.36.390(2).

52. If "the called party states or indicates that he or she does not wish to be called" then the "company or organization shall not make any additional telephone solicitation of the called party at that telephone number within a period of at least one year." *Id.* at .390(3).

53. A telephone solicitation is a "call by a commercial or nonprofit company or organization to a residential telephone customer" to encourage the purchase of "property, goods, or services" or to solicit "donations of money, property, or services." *Id.* at .390(1).

54. The Supreme Court recently recognized again the invasion of privacy from these text messages**.** "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'… In plain English, the TCPA prohibited almost all robocalls to cell phones." *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2344, 207 L. Ed. 2d 784 (2020).

## FIRST CAUSE OF ACTION:
### Violations of 47 U.S.C. § 227(b) & 47 C.F.R. § 64.1200(a)(1)-(2)

55. Defendants used an ATDS, artificial voice, or prerecorded voice to contact Robert in violation of 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a)(1)-(2).

56. As a result of Defendants' violations of 47 C.F.R. § 64.1200(a)(1)-(2), Robert has been damaged and is entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Because Defendants knowingly and willfully violated 47 C.F.R. § 64.1200(a)(1)-(2), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

58. Robert is also entitled to injunctive relief prohibiting Defendants from using an ATDS, artificial voice, and prerecorded voice when sending telemarketing text messages without prior express written consent.

## SECOND CAUSE OF ACTION
### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)

59. Defendants made telemarketing calls to Robert's residential cellular telephone without instituting procedures to maintain an internal Do Not Call list and without disclosing the identity of the individual sending the text messages, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).

60. As a result of Defendants' violations of 47 C.F.R. § 64.1200(d), Robert has been damaged and is entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

61. Because Defendants knowingly and willfully violated 47 C.F.R. § 64.1200(d), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

LAWHQ, LLC
299 S. MAIN ST #1300
SALT LAKE CITY, UT 84111
(385) 285-1090

62. Robert is also entitled to injunctive relief requiring Defendants to institute procedures to maintain an internal Do Not Call list and to provide proper identification of the caller if telemarketing.

### THIRD CAUSE OF ACTION:
### Violations of RCW 19.190.060 & RCW 19.86

63. Defendants sent commercial text messages without Robert's clear and affirmative consent in violation of RCW 19.190.060.

64. As a result of Defendants' violations of RCW 19.190.060, Robert has been damaged and is entitled to an award of $500.00 in statutory damages for each violation, as well as costs and attorneys' fees, pursuant to RCW 19.190.040(1) and 19.86.090.

65. Robert is also entitled to injunctive relief prohibiting Defendant from sending commercial text messages without first obtaining clear and affirmative consent.

### FOURTH CAUSE OF ACTION:
### Violations of RCW 80.36.390 & RCW 19.86

66. Defendants made telephone solicitations to Robert without disclosing the name of the individual sending the messages and after Robert had asked for the messages to stop, in violation of RCW 80.36.390.

67. As a result of Defendants' violations of RCW 80.36.390, Robert has been damaged and is entitled to an award at least $100.00 in statutory damages for each violation, as well as cost and attorneys' fees, pursuant to RCW 80.36.390(6).

68. Because RCW 80.36.390(6) provides for damages of "at least one hundred dollars for each individual violation" and RCW 80.36.390(4) contemplates "a fine of up to one thousand dollars for each violation," Robert asks the court to award $1,000.00 in statutory damages for each violation.

69. Robert is entitled to injunctive relief requiring Defendants to disclose the name of the individual sending the text messages. Robert is also entitled to injunctive relief prohibiting Defendants from making telephone solicitations for at least a year after February 5, 2021.

### FIFTH CAUSE OF ACTION:
### Invasion of Privacy

70. The volume of texts Robert was forced to receive, especially after Robert asked for the texts to stop, would be offensive to any reasonable person.

71. The verbal abuse and swearing that Robert was forced to endure after asking for the text messages to stop would also be offensive to any reasonable person.

72. Defendant's actions were done with actual malice and with the intent to cause harm or knowledge that the harm was substantially certain to result, entitling Plaintiff to putative damages.

73. As a direct and proximate result, Robert has suffered damages in an amount to be determined at trial.

### RELIEF REQUESTED

Robert respectfully requests the Court grant the following relief against Defendants:

A. Robert seeks an amount to be determined at trial that is not less than $129,000 as a result of at least 86 violations of 47 C.F.R. § 64.1200(a)(1)-(2).

B. Robert seeks an amount to be determined at trial that is not less than $129,000 as a result of at least 86 violations of 47 C.F.R. § 64.1200(d).

C. Robert seeks an amount to be determined at trial that is not less than $43,000 as a result of at least 86 violations of RCW 19.190.060.

D. Robert seeks an amount to be determined at trial that is not less than $86,000 as a result of at least 86 violations of RCW 80.36.390.

E. Robert seeks an amount to be determined at trial as a result of at least 86 commercial text messages that invaded his right to privacy.

F. Robert seeks a finding that his injuries by Defendants were willful and malicious.

G. Robert seeks costs and fees pursuant to 28 U.S.C. § 1920, RCW 19.86.090, and RCW 80.36.390(6).

H. Robert seeks judgment interest pursuant to 28 U.S.C. § 1961.

I. Robert seeks injunctive relief prohibiting such conduct in the future.

J.  Robert seeks any other relief the Court may deem just and proper.

**JURY DEMAND**

Robert requests a jury trial as to all claims of the complaint so triable.

DATED: November 5, 2021.

/s/ *Walter Smith*
Walter Smith
Smith & Dietrich Law Offices PLLC
3905 Martin Way E Suite F
Olympia, WA 98506
walter@smithdietrich.com

James Wertheim (*Pro Hac Vice* forthcoming)
LawHQ, LLC
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
jim@lawhq.com

*Attorneys for Plaintiff*